In an action to recover damages for violation of the Franchised Motor Vehicle Dealer Act (Vehicle and Traffic Law § 460 et seq.), the defendant appeals from an order of the Supreme Court, Suffolk County (Pines, J.), dated May 26, 2011, which granted the plaintiffs’ motion, in effect, for summary judgment on the issue of liability and denied its cross motion for summary judgment dismissing the complaint.
Ordered that the order is affirmed, with costs.
Volkswagen Group of America, Inc., sued herein as Volkswagen of America, Inc., doing business as Audi of America, Inc., is a franchisor which does business through one of its divisions, Audi of America, Inc. (hereinafter Audi). The plaintiffs are two franchised Audi dealers in Suffolk County. At issue in this litigation are two incentive programs offered by Audi to dealers starting in 2007 to encourage dealers to purchase more Audi vehicles returned by customers at the expiration of their leases (hereinafter lease-returns), thereby keeping the vehicles from being sent to auction houses. Leased vehicles are owned by Audi’s wholly owned subsidiary and captive finance source, VW Credit, Inc. (hereinafter VW Credit) (see Vehicle and Traffic Law § 462 [16]). At the end of the lease term, a leased vehicle is returned to the dealer — a process known as “grounding.” The dealer then has the option of returning the vehicle to VW Credit or purchasing the vehicle and adding it to its inventory of used vehicles for sale. If the grounding dealer does not purchase the vehicle during the two-day grounding period, any Audi dealer may bid on the vehicle through the web address “AudiDirect.com.” If no Audi dealer purchases the lease-return, the vehicle is sent to an auction house.
The “CPO Purchase Bonus” is a payment by Audi to dealers, equal to 1.5% of the manufacturer’s suggested retail price on the sale of new vehicles, plus an additional 1% if the customer buys the new vehicle without financing. Existing dealers, such as the plaintiffs, qualified quarterly by purchasing 30%-50% (depending upon the year of the program) of their overall purchase objective for lease-returns, which is based upon the *670 number of maturing lease-returns at a dealership, and 20%-40% of the purchase objective in each vehicle group. Newly franchised dealers, not having a portfolio of maturing lease-returns, qualified for the CPO Purchase Bonus by meeting a sales objective for the sale of certified pre-owned vehicles. Audi paid this bonus for all new vehicles sold during a qualifying quarter, and made the payment during the following quarter.
Under the “Keep It Audi” program, dealers received increasing discounts from VW Credit on the purchase of grounded lease-returns depending on the particular dealer’s qualification level for the program. There were three qualifying levels— Qualifier, Performer, and Champion, which required the dealers to purchase increasing percentages of their quarterly purchase objectives. A dealer’s qualification level was determined each quarter, and the dealer received discounts on purchases of lease-returns made during the next quarter. Dealers qualifying at any level were offered the same discounted price for the purchase of nongrounded lease-returns through AudiDirect.com. Additionally, for the sale of each certified pre-owned vehicle purchased from VW Credit, qualifying dealers received increased cash bonuses, and Performers and Champions received priority access for the purchase of used company cars. New dealers were automatically qualified as Champions for three years, and were not required to meet any lease-return purchase objective.
The plaintiffs commenced this action, alleging that the treatment of newly franchised dealers under the two programs violated the Franchised Motor Vehicle Dealer Act (Vehicle and Traffic Law § 460 et seq. [hereinafter the FMVDA]) because it constituted unlawful price discrimination in favor of newly franchised dealers. The plaintiffs moved, in effect, for summary judgment on the issue of liability. Audi cross-moved for summary judgment dismissing the complaint. The Supreme Court granted the plaintiffs’ motion and denied Audi’s cross motion, concluding that the programs violated the FMVDA. Audi appeals.
The Supreme Court properly determined that treatment of newly franchised dealers under the subject programs constituted unlawful price discrimination in violation of the FMVDA. Vehicle and Traffic Law § 463 (2) (g) provides, in relevant part:
“It shall be unlawful for any franchisor, notwithstanding the terms of any franchise contract: . . .
“(g) To sell or offer to sell any new motor vehicle to any franchised motor vehicle dealer at a lower actual price therefor than the actual price offered to any other franchised motor vehicle dealer for the same model vehicle similarly equipped or to *671 utilize any device including, but not limited to, sales promotion plans or programs which result in such lesser actual price . . . This paragraph shall not be construed to prevent the offering of incentive programs or other discounts provided such incentives or discounts are reasonably available to all franchised motor vehicle dealers in this state on a proportionately equal basis.”
The Supreme Court properly determined that the CPO Purchase Bonus violated this section of the FMVDA. Audi offered new vehicles to dealers at lower actual prices than it offered similar vehicles to dealers not qualifying for the program. Contrary to Audi’s contention, it is not relevant that the discount was not offered at the time of purchase, since the rebates, although made at a later time, resulted in a lower actual price. Moreover, the program is not saved by the savings clause of Vehicle and Traffic Law § 463 (2) (g), as the program was not “reasonably available to all . . . dealers ... on a proportionately equal basis.” The plaintiffs established that they faced higher costs to qualify for the CPO Purchase Bonus than did newly franchised dealers, which, by virtue of their automatic Champion status in the Keep It Audi program, could purchase their used inventory from any source and in any combination, including from the lowest-cost auctions and for the lowest available price on AudiDirect.com. Moreover, the purchase objective for existing dealers was based upon the lease market during the three years immediately preceding the year when the purchase objective was fixed, while the new-dealer sales objectives were based upon current market conditions.
The Supreme Court also properly determined that the Keep It Audi program violated Vehicle and Traffic Law § 463 (2) (aa), which provides, in relevant part: “It shall be unlawful for any franchisor, notwithstanding the terms of any franchise contract . . . (aa) [t]o ... (1) sell directly to a franchised motor vehicle dealer . . . motor vehicles ... at a price that is lower than the price which the franchisor charges to all other franchised motor vehicle dealers.”
Contrary to Audi’s contention, the plaintiffs submitted evidence of an actual sale of a lease-return to a newly franchised dealer at a price lower than that which they were charged for similar vehicles. In addition to submitting a spreadsheet of prices charged to Audi of Smithtown, Inc., for grounded lease-returns, and the prices which would have been available to newly franchised dealers automatically qualifying at a higher level in the program, the plaintiffs submitted the transcript of the deposition testimony of the general manager of auction operations at VW Credit as to a grounded lease-return purchased *672 by newly franchised dealer Atlantic Imports, Inc. (hereinafter Atlantic), at a reduced price that was established by virtue of Atlantic’s automatic classification at the Champion qualifying level. While it is unclear from the testimony as to which quarter this illustrative purchase was made, there was no quarter in which both of the plaintiffs achieved Champion status. Accordingly, the plaintiffs established that this vehicle was sold to a dealer at a price lower than that which was charged to all other dealers.
Finally, while lease-returns were sold to dealers by VW Credit and not Audi itself, Vehicle and Traffic Law § 463 (2) (u) makes it unlawful for any franchisor to employ a subsidiary corporation or captive finance source to accomplish what would otherwise be unlawful conduct on the part of the franchisor. Contrary to Audi’s contention, Vehicle and Traffic Law § 463 (2) (u) squarely applies to make Audi liable for price discrimination in the sales of lease-returns made by its subsidiary and captive finance source, VW Credit.
Accordingly, the Supreme Court properly granted the plaintiffs’ motion and denied the cross motion.
Audi’s remaining contentions are either not properly before this Court or without merit. Mastro, J.E, Lott, Austin and Cohen, JJ., concur.
Motion by the respondents on an appeal from an order of the Supreme Court, Suffolk County, dated May 26, 2011, to strike the addendum to the appellant’s reply brief and the references to the addendum at pages 24 through 26 of the reply brief or, in the alternative, for the consideration of the arguments raised in the affirmation in support of their motion as a response to the arguments raised in the appellant’s reply brief. Cross motion by the appellant for leave to annex an addendum to its reply brief. By decision and order on motion of this Court dated July 2, 2012, the motion and cross motion were held in abeyance and referred to the panel of Justices hearing the appeal for determination upon the argument or submission thereof.
Upon the papers filed in support of the motion and the cross motion, and upon the argument of the appeal, it is
Ordered that those branches of the motion which were to strike stated portions of the appellant’s reply brief are granted, the addendum to the appellant’s reply brief and the references thereto at pages 24 through 26 of the reply brief are stricken and have not been considered in the determination of the appeal, and the motion is otherwise denied as academic; and it is further,
*673 Ordered that the cross motion is denied. Mastro, J.E, Lott, Austin and Cohen, JJ., concur.